UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

| | | |
|---|---|---|
| RENE NUNEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7: 08-CV-201-KKC |
| | ) | |
| vs. | ) | |
| | ) | |
| FEDERAL BUREAU OF PRISONS, ET AL., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Rene Nunez ("Nunez"), an inmate confined at the United States Penitentiary in Coleman, Florida ("USP-Coleman Two"), has filed a *pro se* civil rights complaint under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [R. 2] The Court has granted his motion to proceed without prepayment of the filing fee by separate Order.

The Court screens civil rights complaints pursuant to 28 U.S.C. § 1915A. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). As Nunez is appearing *pro se*, his Complaint is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his complaint are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court must dismiss a case at any time if it determines the action (a) is frivolous or malicious, or (b) fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2).

## I.   FACTUAL BACKGROUND

Nunez is a Cuban national in the custody of the Bureau of Prisons ("BOP") serving a

sentence for bank robbery, but is subject to an Order of Deportation upon completion of his sentence. The gravamen of his Complaint is that because he is a member of a Cuban gang, over nearly 15 years the BOP has persistently subjected him to a unreasonable risk of harm by its failure to completely segregate him from members of rival Puerto Rican gangs.

Nunez alleges that the BOP first exposed him to these dangers in 1995 when he was incarcerated at U.S.P. - Allenwood, where he participated in a fight between members of rival gangs. Nunez indicates he was repeatedly transferred to other BOP facilities throughout the nation in the aftermath of similar violent confrontations, including penitentiaries in Terre Haute, Indiana; Lompoc, California; and Marion, Illinois.  At each of these facilities the BOP permitted members of rival gangs to co-mingle, which inevitably resulted in attacks between rival gang members.  As a result, Nunez has participated in numerous altercations with opposing gang members in recreation yards and other open spaces during which he has received, and inflicted, serious bodily injuries.

Nunez was transferred to U.S.P. - Big Sandy in Inez, Kentucky in February 2004.  In addition to the general threat presented by other gang members, Nunez alleges that Defendant Parr ordered him transferred into a cell with an inmate whom she knew, based on information in Nunez's file, had a conflict with Nunez.  Finally, Nunez alleges that Defendant Captain Bobby G. attempted to have him killed by providing a member of a rival gang with a home-made knife.  Nunez alleges these last two events occurred on March 10, 2005.

Nunez raised the issues presented in his Complaint to Warden Rios in BOP Remedy ID #496277.  However, that grievance was rejected on June 6, 2008, for failure to limit the grievance to the Form BP-229 and one continuation page.  Instead of accepting the BOP's invitation to rectify the error and re-submit the grievance, on June 9, 2008, Nunez appealed to the Mid-Atlantic Regional Office ("MARO").  MARO rejected the appeal on June 16, 2008, on the ground that Nunez had filed

2

the grievance at the wrong level because he had not filed his grievance at the institutional level in the proper format.  Nunez waited until September 8, 2008 before filing an appeal to the Central Office, which also rejected the appeal on September 20, 2008 as filed at the wrong level, and again directed Nunez to return to the institutional level to properly present his claim.

Instead, Nunez filed the present lawsuit on October 14, 2008, seeking $10 million in damages and an order directing the BOP to completely segregate him from members of rival gangs.  Nunez named as defendants Harley Lappin, the Director of the BOP; Kim White, Director of the BOP's Mid-Atlantic Region; Hector Rios, the Warden at U.S.P. Big Sandy; Case Manager Coordinator Legg; Captain Bobby G.; and Ms. Parr.

## II.   DISCUSSION

42 U.S.C. § 1997e(a) requires a prisoner challenging prison conditions pursuant to 42 U.S.C. § 1983, *Bivens*, or other federal law to exhaust all available administrative remedies before filing suit in federal court.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Wyatt v. Leonard*, 193 F.3d 876, 877-78 (6th Cir. 1999).  The prisoner must comply with all procedural rules in the grievance process, including meeting all applicable filing deadlines.  *Woodford v. Ngo*, 126 S. Ct. 2378, 2387-88 (2006).  Because Section 1997e(a)'s exhaustion requirement is mandatory, claims that are not properly exhausted are conclusively barred.  *Id.* at 2382.

The administrative remedies available to prisoners incarcerated in BOP facilities are provided by the inmate grievance process set forth at 28 C.F.R. §§ 542.10-.19.  Before filing a formal grievance, the prisoner must give the prison staff the chance to correct the problem themselves by presenting his complaint informally by submitting a Form BP-8.  28 C.F.R. § 542.13(a).  If this fails to resolve the issue, the prisoner initiates the formal grievance process by filing a Form BP-229, a formal written request to the Warden, within twenty (20) days of the event grieved.  28 C.F.R.

§ 542.14(a).  The Warden must decide the grievance within twenty (20) calendar days.  28 C.F.R.
§ 542.18.  If the Warden does not grant the prisoner the relief he requests, the prisoner may appeal
by filing a Form BP-230 with MARO within twenty (20) days of the Warden's denial.  28 C.F.R.
§ 542.15(a).  MARO must decide the appeal within thirty (30) calendar days.  28 C.F.R. § 542.18.
If MARO does not grant the prisoner the relief he requests, the prisoner may appeal by filing a Form
BP-231 with the Central Office within thirty (30) days of MARO's denial.  28 C.F.R. § 542.15(a).
The Central Office must decide the appeal within forty (40) calendar days.  28 C.F.R. § 542.18.

If the BOP decides at any level that the time allowed for it to respond to the grievance or
appeal is not sufficient for it to make an appropriate decision, it may give itself an extension of time
to respond once at each level -- by twenty (20) days at the institution level, thirty (30) days at the
Regional Office level, and twenty (20) days at the Central Office level.  28 C.F.R. § 542.18.  If the
BOP rejects a grievance or appeal at any level and does not give the prisoner the opportunity to
correct the defect, the prisoner may immediately appeal the rejection to the next appellate level.  28
C.F.R. § 542.17(c).  If the prisoner does not receive a response from the BOP within the time
allowed (including any extensions), the prisoner may consider the absence of a response to be a
denial at that level.  28 C.F.R. § 542.18.

As the Court indicated in its Order dated October 21, 2008 [R. 5], the documents tendered
by Nunez with his Complaint establish that he has failed to properly exhaust his administrative
remedies with respect to any claim asserted in his Complaint.  The grievance Nunez filed with the
warden was rejected on June 6, 2008, for failure to comply with the BOP's rule limiting the
grievance to the Form BP-229 and one continuation page.  The notice of rejection explained to
Nunez that he could rectify the deficiency by filing the grievance and attaching at most one
additional page of 8.5 by 11 paper with legible writing on one side and including the original notice

4

of rejection for reference.

Instead, Nunez simply filed an appeal to the regional office.  While pursuing an appeal directly is permitted under BOP regulations where the institution does not afford a grievant to opportunity to correct the error, 28 C.F.R. § 542.17(c), that course is not available where the institution rejects the grievance and directs the inmate to re-file the grievance in accord with the appropriate filing requirements.  Because Nunez had failed to follow this course, on June 16, 2008, MARO again rejected the grievance, and expressly directed him to resubmit the grievance in the manner described by the warden's office.  The BOP's Central Office rejected his subsequent appeal on the same ground, and directed him to re-file his grievance with the warden in compliance with his instructions.

Because Nunez steadfastly refused to adhere to the BOP's filing requirements, the BOP has not yet had the opportunity to address the merits of his concerns.  A prisoner may not simply ignore an agency's procedural requirements for administrative appeals, for permitting him to do so would turn the requirement that a prisoner exhaust administrative remedies prior to filing suit into a meaningless formality.  *Woodford*, 126 S. Ct. at 2382.  In this case, Nunez's refusal to abide by the BOP's filing requirements has more severe consequences:  because the time permitted to file a grievance regarding the matters complained of has now long since passed, 28 C.F.R. § 542.14(a), Nunez can no longer properly exhaust his claims as required by law, those claims are now conclusively barred, and must be dismissed with prejudice.  *Jones v. Bock*, 127 S.Ct. 910, 920-21 (2007) (complaint is subject to dismissal if the allegations, taken as true, show the plaintiff is not entitled to relief); *Winkelman v. John Doe*, 2007 WL 4139713 at *7-8 (E.D.Ky. 2007) (under *Jones*, complaint is subject to dismissal upon initial screening where it is apparent from complaint that inmate has failed to properly exhaust the prison grievance procedure); *Spaulding v. Oakland County*

5

*Jail Medical Staff,* 2007 WL 2336216, *3 (E.D. Mich. 2007) (same); *Funk v. Washburn,* 2007 WL 17473 84, *1 (M.D. Fla. 2007) (same).

Even if this were not so, Nunez's claims are also barred by the applicable statute of limitations. Because Section 1983 does not provide its own statute of limitations, federal courts "borrow" the most analogous statute of limitations in the state where the events giving rise to the claim occurred. *Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985).

With respect to events occurring in Kentucky, Nunez indicates that he was transferred to U.S.P. - Big Sandy in Kentucky in February 2004. Any conduct occurring in Kentucky which might give rise to a claim is governed by the one-year statute of limitations for residual tort claims found in KRS 413.140(1)(a). *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990); *University of Kentucky Bd. of Trustees v. Hayse*, Ky., 782 S.W.2d 609, 613 (1989). Nunez's allegations regarding an alleged conspiracy to have him murdered on March 10, 2005, are therefore clearly time-barred.

Prior to his incarceration in Kentucky, Nunez indicates that he was transferred to U.S.P. - Marion in Illinois some time in 1999-2000 until his transfer to Kentucky in 2004. In civil rights actions, federal courts borrow Illinois' 2-year statute of limitations for personal injury claims found at 725 ILCS 5/13-202. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). Because the last potentially-actionable conduct in Illinois must have occurred no later than February 2004 when Nunez was transferred to Kentucky, any civil rights claims arising out of events transpiring in Illinois became time-barred no later than February 2006.

Apart from any discrete events which may have caused him injury, Nunez also alleges that the remaining BOP officials are liable for their failure to respond to a known threat to his safety and security. The controlling fact is that Nunez himself alleges that he has been an active participant,

both giving and receiving, of gang-related violence for nearly 15 years.  As a matter of federal law, a claim accrues and the statute of limitations begins to run when a plaintiff knows, or has reason to know through the exercise of reasonable diligence, of the injury that provides the basis for the claim. *Collard*, 896 F.2d at 183; *Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir. 2005); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991); *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991) (courts look for the event that should alert a typical lay person to protect his or her rights).  As early as 1997, when Nunez stabbed his Puerto Rican cellmate in the eye during a confrontation, the threat presented to his safety by rival gang members has been abundantly clear.  The Court concludes that Nunez's claims regarding his placement and security accrued no later than 1997 and are hence time-barred.

Finally, although not controlling with respect to the Court's disposition of his claims, the merits of Nunez's allegations appear dubious at best.  By his own admission over the term of his lengthy incarceration Nunez has been involved in numerous gang-related incidents, and has actively participated in many.  The narrative provided by Nunez indicates that following many of these incidents the BOP has placed him in some form of restricted custody, removed from the general population and away from rival gang members.  The BOP has also transferred him to entirely different facilities on a number of occasions.  While the record before the Court is by no means adequately developed to assess the ultimate viability of the Nunez's claims, it does reflect some effort by the BOP to protect Nunez from attacks from rival gang members, or for that matter, to protect rival gang members from attacks by Nunez.  The allegations made by Nunez thus fall far short of evidencing the kind of reckless disregard for his safety which are the hallmark of a failure-to-protect claim.  *Cf. Ward v. Dyke*, 58 F.3d 271 (6th Cir. 1995) (inmate has no constitutional right not to be transferred from one level II institution to another when prison officials, in exercise of their

7

discretion, determine that prisoner is an adjustment problem); *Gross v. Unknown Director of Bureau of Prisons*, 08-CV-111-KKC, Eastern District of Kentucky [R. 6 therein].

### III.   CONCLUSION

The Court being advised, **IT IS ORDERED** as follows:

1.      Nunez' Complaint [R. 2] is **DISMISSED WITH PREJUDICE**.

2.      Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendants.

Dated this 1st day of December, 2008.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**